**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————— )
                                                    )
KEVIN MICHAEL JONES,                )
                                                    )
                    Plaintiff,              )
                                                    )
            v.                                   )        Civil Action No. 08-0852 (EGS)
                                                    )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social Security,  )
                                                    )
                    Defendant.[1]          )
———————————————— )

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion to Remand and Supporting Memorandum of Points and Authorities [ECF No. 49] and assorted motions filed by plaintiff [ECF Nos. 53, 57, 61-62, 64, 66, 68-70, 72-75]. For the reasons discussed below, all of plaintiff's motions will be denied, defendant's motion will be granted, the Commissioner's final decision will be reversed, and this matter will be remanded to the Commissioner for further administrative proceedings.

## I.  BACKGROUND

On October 7, 2002, plaintiff applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, *see* 42 U.S.C. §§ 416(i), 423(d), and for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, *see* 42 U.S.C. § 1382(a)(3), claiming to have been disabled since January 3, 2000 due to cervical disc

—————————————
[1]        The current Acting Commissioner of Social Security is substituted as the party defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

disease, cervical arthritis, and lumbar disc disease with arthritis.  *See* Compl. ¶ 4; Administrative

Record ("A.R.") at 42, 121-23.  The application was denied initially and on reconsideration, *see*

Compl. ¶ 4, and on April 27, 2004, plaintiff requested a hearing before an administrative law

judge ("ALJ").  *Id.* ¶ 5; A.R. at 69).  The hearing took place on May 15, 2007; plaintiff was not

represented by counsel.  Compl. ¶ 5; *see* A.R. at 281-89.

        The ALJ determined that plaintiff "ha[d] not been under a disability within the meaning

of the Social Security Act from January 3, 2000 through [May 15, 2007,] the date of [the]

decision."  A.R. at 41.  Although plaintiff had not engaged in substantial gainful activity since

January 3, 2000, and had severe impairments, *see* A.R. at 42, the ALJ concluded that he did "not

have an impairment or combination of impairments that [met] or medically equal[led] one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix A."  A.R. at 44.  Further, the ALJ

found that plaintiff had the residual functional capacity to perform a wide range of work at a

lighter level of exertion.  A.R. at 44.  In short, plaintiff was not disabled for purposes of his

applications for period of disability, disability insurance, and SSI benefits.  A.R. at 47.  The

Appeals Council affirmed the decision.  A.R. at 6.

        Plaintiff filed his complaint [ECF No. 1] in May 2008 seeking judicial review of the

Commissioner's final determination.  He has alleged that the Commissioner's finding that he is

not disabled is not based on substantial evidence, Compl. ¶ 12, and he demands that the decision

"be reviewed, reversed, and set aside."  *Id.* at 3 (page number designated by ECF).  Defendant

filed an Answer [ECF No. 6] and the Administrative Record [ECF No. 7] on August 20, 2008.

        The ALJ erred in that he "relied exclusively upon a standardized set of guidelines

developed by the SSA to determine the types of work an individual with a given set of infirmities

generally can perform." *Jones v. Astrue*, 650 F.3d 772, 773 (D.C. Cir. 2011).  "[E]xclusive

reliance on those guidelines [was] inappropriate where, as here, [plaintiff's] impairment is due in

part to pain." *Id.* (citing 20 C.F.R. § 416.969a(c)).  The error was discovered only after the

ALJ's decision became final and the Commissioner filed an Answer to the Complaint – thus

barring a motion for a remand in order that "additional evidence to be taken before the

Commissioner . . . upon a showing that there is new evidence which is material and that there is

good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .

."  42 U.S.C. § 405(g) (sentence six).  The Commissioner then sought an alternative route to

remand.

On December 5, 2008, defendant filed a Motion for Entry of Judgment with Remand

Pursuant to Sentence Four of 42 U.S.C. § 405(g) and Supporting Memorandum of Law [ECF

No. 15], in order that, on remand, the Commissioner could:

> 1.  Hold a new hearing to obtain supplemental vocational expert
> evidence regarding plaintiff's ability to perform other work,
> evidence provided in response to a complete hypothetical question;
>
> 2.   Identify and resolve any conflicts between the occupational
> evidence provided by the vocational expert and information in the
> Dictionary of Occupational Titles and the Selected Characteristics
> of Occupations, and in doing so, ensure that the hypothetical
> question to the vocational expert is consistent with the hearing
> decision's residual functional capacity finding; and
>
> 3.  Issue a new decision.

Mot. for Entry of J. at 1-2.

The fourth sentence of § 405(g) authorizes the district court "to enter, upon the pleadings

and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing."  42

U.S.C. § 405(g) (sentence four).  A sentence four remand, then, is "a post-judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

The Court issued an Order [ECF No. 17] on December 8, 2008, reversing the Commissioner's decision and remanding the matter for further administrative proceedings.  On February 25, 2009, in a subsequent Order denying various motions filed by plaintiff, the Court stated:

> In reviewing an agency's final decision in a case such as this one brought under 42 U.S.C. § 405(g), this Court is not empowered to make substitute findings of fact or decisions for the agency. Rather, it is empowered to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In this case, the final agency decision was reversed and the matter was remanded so that the Commissioner could issue a new decision after further proceedings.  In short, the plaintiff has already obtained the maximum relief -- reversal and remand -- that the Court is authorized to award in a § 405(g) case.

Order [ECF No. 25] at 1-2.  Plaintiff filed a Notice of Appeal [ECF No. 31] on May 20, 2009.

The United States Court of Appeals for the District of Columbia Circuit found that this Court "misapprehended the extent of its remedial power."  *Jones*, 650 F.3d at 773.  In this case, "it is undisputed that [plaintiff] made out a prima facie case and that, on the extant administrative record, the Commissioner could not meet his burden of proof."  *Id.* at 777.  This Court "could have, if warranted by the record, afford [plaintiff] additional relief," in that it "could have remanded the case with an order to pay [plaintiff] benefits, rather than to rehear the matter."  *Id.* Acknowledging the Commissioner's argument that the existing record does not establish plaintiff's clear entitlement to Social Security benefits, the Circuit noted that "the sufficiency of the record evidence is for the district court to determine in the first instance."  *Id.*  In the end, the

Circuit "remand[ed] this matter for the district court to determine the appropriate remedy in light of the full extent of its power under circuit law." *Id.*

## II. DISCUSSION

The Court's task is to determine whether, based on the existing administrative record, there is sufficient evidence to establish plaintiff's entitlement to period of disability, disability insurance and SSI benefits as of January 3, 2000.  If so, the Court may reverse the Commissioner's decision and remand with an order to pay plaintiff benefits.  *See Jones*, 650 F.3d at 777.  If not, the Court may g reverse the Commissioner's decision and remand the matter under sentence four of § 405(g) for rehearing.  Defendant contends that "there is conflicting evidence as to the extent and impact of [plaintiff's] cervical and lumbar disc disease," Def.'s Mot. to Remand and Supporting Mem. of P. & A. ("Def.'s Mem.") at 3, such that, on the basis of the current record, "it cannot be said that the record demands an award of benefits from the alleged onset date in 2000."  *Id.* at 4.   Upon review of the ALJ's decision and the administrative record, the Court concurs.

"[T]he term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1); *see* 20 C.F.R. §§ 404.1505(a) (disability), 416.905(a) (SSI). For purposes of period of disability and disability insurance benefits, a claimant must also meet certain status requirements, *see* 42 U.S.C. §§ 416(i) and 423, and plaintiff's "earnings record shows that [he] has acquired sufficient quarters of coverage to remain insured . . . through September 30, 2003."  A.R. at 40.  Plaintiff still "must establish disability on or before

[September 30, 2003] in order to be entitled to a period of disability and disability insurance benefits." *Id.*

There is a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). First, the ALJ considers the claimant's work activity. *See id.* § 404.1520(b). If the claimant is "doing any substantial gainful activity," he is not disabled. *Id.* § 404.1520(a)(4)(i). If he is not, the analysis proceeds to the second step.

Second, the ALJ considers the medical severity of the claimant's impairment(s). *Id.* § 404.1520(a)(4)(ii). If the claimant "do[es] not have any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities," he is not disabled. *Id.* If he does have a severe impairment or impairments, the analysis proceeds to the third step.

Third, the ALJ considers the medical severity of the claimant's impairment in order to determine whether the "impairment(s) . . . meets or equals one of our listings in [20 C.F.R. Part 404, Subpart P,] appendix 1 . . . and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled and the ALJ does not consider the claimant's age, education or work experience. *Id.* § 404.1520(d). *Id.*

Fourth, if the ALJ determines that the claimant's impairments do not meet or equal a listing in appendix 1, *id.* § 404.1520(e), he assesses the claimant's residual functional capacity and his past relevant work, *id.* § 404.1520(a)(4)(iv), taking into account "all the relevant medical and other evidence in [the] record," *id.* § 404.1520(e), to determine whether the claimant can do past relevant work, *id.* The ALJ "compare[s the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f).

If the claimant still can do this kind of work, he is not disabled.  *Id.*  If he cannot, the analysis

proceeds to the fifth and final step.

Fifth, if the ALJ finds that the claimant cannot do past relevant work because of his

severe impairments, the ALJ "consider[s] the same residual functional capacity assessment . . .

together with [the claimant's] vocational factors (. . . age, education, and work experience) to

determine if [he] can make an adjustment to other work."  *Id.* § 404.1520(g); *see id.* §

404.1520(a)(4)(v).  If he cannot make an adjustment to other work, the claimant is disabled.  *Id.*

§ 404.1520(g).

The five-step evaluation process on an application for SSI benefits is substantially similar

to the evaluation process for period of disability and disability insurance benefits.  *Compare* 20

C.F.R. § 404.1520(a) *with* 20 C.F.R. § 416.920(a)(4).  However, the SSI analysis takes into

account any of the claimant's "impairment(s) and related symptoms, such as pain, [which] cause

limitations of function or restrictions [and] which limit [his] ability to meet certain demands of

jobs."  20 C.F.R. § 416.969a(a); *see id.* § 416.969 (referring to rules applicable "in cases where a

person is not doing substantial gainful activity and is prevented by a severe medically

determinable impairment from doing vocationally relevant past work").  "Limitations or

restrictions which affect [the claimant's] ability to meet the demands of jobs other than the

strength demands, that is, demands other than sitting, standing, walking, lifting, carrying,

pushing or pulling, are considered nonexertional."  *Id.*  Examples of nonexertional limitations

and restrictions are:

> (i) . . . difficulty functioning because [the claimant is] nervous,
> anxious, or depressed;
>
> (ii) . . . difficulty maintaining attention or concentrating;

(iii) . . . difficulty understanding or remembering detailed instructions;

(iv) . . . difficulty in seeing or hearing;

(v) . . . difficulty tolerating some physical feature(s) of certain work settings, e.g., [the claimant] cannot tolerate dust or fumes; or

(vi) . . . difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.

20 C.F.R. § 416.969a(c)(1). Where the claimant's "impairment(s) and related symptoms, such as pain, only affect [his] ability to perform the nonexertional aspects of work-related activities, . . . [t]he determination as to whether disability exists [is] based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in appendix 2" of subpart P of part 404 of this chapter, namely the Medical-Vocational Guidelines. *Id.* § 416.969a(c)(2); *see id.* § 416.969.

## A. Step One: Work Activity

After plaintiff sustained an on-the-job injury in 1995, he apparently had other work, for example, "as an independent contractor." A.R. at 284. Plaintiff was last employed in January 2000, at which time he was a lumper unloading trucks at a facility in Jessup, Maryland. A.R. at 283-84. He has not been employed since. A.R. at 284. The ALJ determined that plaintiff "has not engaged in substantial gainful activity since January 3, 2000, the alleged onset date" of his purported disability. A.R. at 42.

## B. Step Two: Medical Severity of Plaintiff's Impairments

Medical records indicate that plaintiff had been referred to and had received physical therapy as early as September 2002. *See* A.R. at 184. As of November 30, 2002, no x-rays or other test results were available, *see* A.R. at 185, and as of November 21, 2002, plaintiff needed

an evaluation from either a physical therapist or an orthopedist to determine the "quality of disability and how much the disability affects his activity."  A.R. at 196.

William Harpster, M.D., examined plaintiff on February 4, 2003, and diagnosed back, neck and shoulder pain.  A.R. at 187.  Plaintiff reportedly was not taking pain medication at that time.  A.R. at 187.  Dr. Harpster noted that plaintiff had a limited capacity for standing, stooping, kneeling, lifting, pushing and pulling, and no limitations on walking, reaching, or working outdoors.  A.R. at 188.  Although he deemed plaintiff's disability permanent, Dr. Harpster opined that his condition could improve substantially with treatment.  A.R. at 188.  He recommended physical therapy and further evaluation.  A.R. at 188.

David A. Lanham, M.D., a Board certified psychiatrist, evaluated plaintiff on March 27, 2003.  A.R. at 189.  Dr. Lanham found plaintiff to be cooperative, even though plaintiff had not expected to see a psychiatrist.  A.R. at 190.  Plaintiff did not believe that he had any mental or emotional problems, and denied that he was depressed even though he was homeless at the time and in constant pain.  A.R. at 190.  Dr. Lanham did not conduct any psychological testing and recommended that such testing be done.  A.R. at 191.  He recommended no therapy "since [plaintiff had] such strong denial defenses."  A.R. at 191.  "In many areas memory, understanding, sustained concentration and persistence as well as adaptation [were] intact."  A.R. at 191.

Talaat Maximous, M.D., conducted an orthopedic examination on April 29, 2003 regarding plaintiff's complaints of pain in his lower back, left shoulder, and neck.  A.R. at 192.  Plaintiff reported that he sustained injuries to his neck and back in 1995, that x-rays and MRIs were taken thereafter, that he refused recommended surgery and that he injured his shoulder,

arm, neck and back again when he slipped and fell during water therapy.  A.R. at 192.  Plaintiff

walked without assistive devices, A.R. at 193, and reportedly could walk only a few blocks

before having to sit down, A.R. at 192.  The physical examination revealed tenderness around

plaintiff's neck.  A.R. at 193.  "Attempted range of motion of his neck was guarded by muscle

spasms created by the patient himself."  A.R. at 193.  Plaintiff "refused to do any extension" of

his neck, and lateral flexion and side rotation were limited.  A.R. at 192-93.  Similarly, although

adduction and internal rotation of his shoulders were normal, plaintiff resisted "any attempt at

range of motion" and "[a]ttempts at external rotation" of the shoulders.  A.R. at 193.  The range

of motion in plaintiff's elbows, wrists, hands and fingers was "full bilaterally . . . in spite of

plaintiff's resistance and complaint of pain."  A.R. at 193.  Dr. Maximous noted no wasting of

the shoulder muscles and forearms.  A.R. at 193.  Nor did Dr. Maximous note any motor or

sensory deficit in plaintiff's upper extremities.  A.R. at 193.  Although plaintiff's grip strength

measured with a dynamometer tested well on one side, plaintiff refused to make a fist to test

manual grip strength.  A.R. at 193.  Examination of plaintiff's back showed no deformities.  A.R.

193.  The "[a]ttempt at forward flexion" of the back "was markedly limited by [plaintiff] –

guarding to 40 degrees only," and "[l]ateral flexion was 10 degrees in each direction with

guarding from the patient and complaint of pain."  A.R. at 193.  Similarly, examination of the

hips showed no deformity, A.R. at 193, but plaintiff resisted attempts at backward flexion.  A.R.

at 193-94.  Plaintiff's knees and ankles showed no deformities, swelling, or tenderness, and his

reflexes were normal.  A.R. at 194.  Dr. Maximous diagnosed cervical disk disease (C6-7),

cervical arthritis, and lumbar disk disease (L4-5) with arthritis.  A.R. at 194.  He believed,

however, that plaintiff was "overstating his pain and discomfort."  A.R. at 194.  He opined that

plaintiff "would benefit from a psychological evaluation and treatment if indicated." A.R. at 194.

Plaintiff underwent an initial orthopedic evaluation by Eric G. Dawson, M.D. on January 27, 2005. A.R. at 263. Dr. Dawson found it difficult to examine plaintiff's upper extremities, shoulders and lumbar spine because of plaintiff's complaints of pain and discomfort. A.R. at 263-64. His impressions were that plaintiff suffered from (1) a cervical sprain or discopathy, (2) dorsal myofascitis, and (3) lumbar strain and possible discopathy. A.R. at 264. Dr. Dawson recommended physical therapy, A.R. at 262, and examined plaintiff again on February 7, 2005, February 17, 2005, March 24, 2005, and June 27, 2005. A.R. at 255-56, 259, 261. By then, plaintiff "orthopaedically has stabilized and therefore has reached maximum medical improvement." A.R. at 255. He had been discharged from therapy in April 2005 without having undergone a discharge evaluation, however, due to his noncompliance. A.R. at 223.

A. Kossoff, M.D., examined plaintiff on May 31, 2006, and diagnosed lumber and cervical discopathy. A.R. at 253. Dr. Kossoff found that plaintiff was mildly restricted in conducting activities of daily living, and moderately restricted in maintaining social functioning and maintaining concentration. A.R. at 254. Plaintiff could sit, stand and walk for less than 2 hours, and could lift or carry less than 10 pounds. A.R. at 254. In addition, plaintiff's condition had lasted more than 12 months and prevented him from working from May 31, 2006 through at least May 31, 2007. A.R. at 254.

Based on the information in the record, the ALJ found that plaintiff has severe impairments. A.R. at 42.

### C.  Step Three:  Whether Plaintiff's Impairments Meet
### or Medically Equal a Listed Impairment

"No treating, examining, consulting, or reviewing physician has opined that [plaintiff's]

impairments equal in severity any of the listed impairments." A.R. at 44.  The ALJ found that,

"although [plaintiff's] impairments are severe, they are not attended with the specific clinical

signs and diagnostic findings required to meet or equal the requirements set forth in the Listing

of Impairments, Appendix 1 to Subpart P, 20 CFR, Part 404."  A.R. at 44.

### D.  Step Four: Plaintiff's Residual Functional Capacity and
### Ability to Perform Past Relevant Work

With respect to plaintiff's residual functional capacity, the ALJ determined:

> [Plaintiff] has the residual functional capacity to perform a wide
> range of work at the light level of exertion.  He has the capacity to
> life or carry up to 20 pounds occasionally and 10 pounds
> frequently; walk and stand for 2 hours in an 8-hour workday with
> normal breaks; sit for 6 hours in an 8-hour workday with pushing
> and pulling limited to the extent of lifting and carrying; and he
> should avoid stooping, kneeling, crouching, squatting, and
> climbing ramps or stairs.

A.R. at 44.  Although the ALJ found that plaintiff's "medically determinable impairments could

reasonably be expected to produce the alleged symptoms," he deemed plaintiff's "statements

concerning the intensity, persistence and limiting effects of these symptoms . . .  not entirely

credible."  A.R. at 45.  Dr. Maximous' opinion that plaintiff overstated his pain and discomfort

was accorded great weight, notwithstanding, for example, Dr. Harpster's opinion that plaintiff's

impairments were permanent.  A.R. at 45.

In his past work as an electrician, plaintiff "was required to walk, stand, kneel, crouch,

and lift equipment weighing 100 pounds." A.R. at 45.  Given the ALJ's finding as to plaintiff's

residual functional capacity, plaintiff is unable to perform his past relevant work.  A.R. at 45.

E.  Step Five: Whether Plaintiff Can Adjust To Other Work

At this fifth and final step, the ALJ was to determine whether plaintiff can make an adjustment to other work, 20 C.F.R. §§ 404.1520(g), 416.920(g), taking into consideration plaintiff's "impairment(s) and related symptoms, such as pain, [which] cause limitations of function or restrictions [and] which limit [his] ability to meet certain demands of jobs."  20 C.F.R. § 416.969a(a).  Notwithstanding pain as a limiting factor, the ALJ's decision is based upon the Medical-Vocational Guidelines of appendix 2.  Under 20 C.F.R. § 416.969a, however, "the rules of appendix 2 do not direct factual conclusions of disabled or not disabled" in a case such as this where pain affects plaintiff's ability to perform nonexertional aspects of work activity.  20 C.F.R. § 416.969a(c)(2).  There is not sufficient evidence in the administrative record either to confirm the ALJ's assessment of plaintiff's residual functional capacity or to determine whether plaintiff can adjust to other work.  Without such evidence, this Court cannot determine whether plaintiff is disabled.  In other words, "all essential factual issues have not been resolved and there is no clear entitlement to benefits on the record as it now stands." *Faucher*, 17 F.3d at 176.

III.  CONCLUSION

Based on the existing administrative record, plaintiff is not clearly entitled to period of disability benefits, disability insurance or supplemental security income benefits as of January 3, 2000.  The Court grants defendant's motion, reverses the Commissioner's decision, and remands this matter pursuant to sentence four of 42 U.S.C. § 406(g) for further administrative proceedings.  An Order accompanies this Memorandum Opinion.

DATE: July 8, 2013                    EMMET G. SULLIVAN
                                      United States District Judge

13